IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**TARA LOCKWOOD GIBSON,**
**Claimant Below, Petitioner**

**v.) No. 24-ICA-160**        (JCN: 2018018986)

**GREENBRIER VALLEY MEDICAL CENTER,**
**Employer Below, Respondent**

**FILED**
**October 1, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Tara Lockwood Gibson appeals the March 14, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Greenbrier Valley Medical Center ("GVMC") filed a response.[1] Ms. Gibson did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which granted Ms. Gibson a 0% permanent partial disability ("PPD") award for post-concussion syndrome and post-concussion headaches.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 16, 2018, while employed by GVMC, Ms. Gibson was injured while helping a patient get out of bed. Ms. Gibson reported a neck and lumbar injury and was diagnosed with cervical and lumbar radiculopathy. The permanent impairment related to the cervical and lumbar injuries was the subject of previous litigation and the Office of Judges ("OOJ") issued an order dated May 14, 2021, holding that Ms. Gibson had a total of 10% PPD. The OOJ, however, noted that post-concussion syndrome and post-concussion headaches had not been recognized as compensable conditions until after Ms. Gibson's cervical and lumbar injuries had been evaluated. Thus, the OOJ specifically limited its decision to only the cervical and lumbar spine impairments.

However, the OOJ's evidentiary record contained the addendum report by Prasadarao Mukkamala, M.D., dated December 31, 2020. In this report, Dr. Mukkamala

---

[1] Ms. Gibson is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. GVMC is represented by Mark J. Grigoraci, Esq.

acknowledged the compensability of post-concussion headaches and post-concussion syndrome, found that Ms. Gibson was at maximum medical improvement ("MMI") for the conditions, and determined that she did not require further treatment. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*Guides*"), Dr. Mukkamala referred to Section 15.9 on page 311 and rated the headaches at 0% whole person impairment ("WPI"). For post-concussion syndrome, he found no evidence of neurological deficit and said that under the Central Nervous System Section of the *Guides*, there was no impairment.

By order dated June 17, 2021, the claim administrator issued an order that granted no PPD award for post-concussion syndrome and post-concussion headaches. The order was based on Dr. Mukkamala's addendum report dated December 31, 2020. Ms. Gibson protested this order.

On December 6, 2022, Ms. Gibson was evaluated by Bruce Guberman, M.D. Dr. Guberman reviewed medical records dating back to the time of the work injury in February of 2018, and he examined her. Ms. Gibson reported to Dr. Guberman that she had almost constant headaches, difficulty with her memory, and dizziness on and off throughout the day. Dr. Guberman determined that Ms. Gibson required ongoing medication to make the headaches more tolerable, and thus, the paragraph on page 9 of the *Guides*, entitled "Adjustments for Effects of Treatment or Lack of Treatment," applied. Under this section, Dr. Guberman assigned 3% WPI. Then, from Table 2 on page 142 of the *Guides*, for "Mental Status Impairments," Dr. Guberman placed Ms. Gibson in the middle of the category entitled "impairment exists, but ability remains to perform satisfactorily most activities of daily living" for 7% WPI for a combined impairment of 10% WPI for the two conditions.

Dr. Guberman gave deposition testimony on February 7, 2023, in which he noted that he did not specifically assess Ms. Gibson's ability to recall a series of numbers, perform a simple mathematical series, or repeat three unrelated words. Instead, Dr. Guberman testified that he assessed her memory based on reports and records and her oral responses to his questions. Dr. Guberman commented that the interview portion of his examination of Ms. Gibson took about thirty minutes, and he felt able to adequately assess her memory. When questioned about the potential side effects of Ms. Gibson's medications, Dr. Guberman admitted that some of them can cause one to seem sedated, but he did not find that she appeared sedated or "dulled" when he examined her. Further, he noted that some of her medications can cause drowsiness or feeling off-balance, nausea, and rebound headaches. However, he said that her nausea was due to her headaches, and usually a patient either becomes tolerant of the medication, or it is substituted. Dr. Guberman remained of the opinion that Ms. Gibson had 7% WPI for post-concussion syndrome and 3% WPI for post-concussion headaches for a total of 10% WPI.

On September 5, 2023, Mohammed I. Ranavaya, M.D., reviewed preinjury and postinjury medical records and examined Ms. Gibson. He authored a report dated October 18, 2023, documenting his findings and noted that he spent four hours with Ms. Gibson during the exam. Dr. Ranavaya determined that Ms. Gibson was at MMI for post-concussion syndrome and post-concussion headaches. According to Dr. Ranavaya, Ms. Gibson had a prior medical history of treatment for cervical disc disease, anxiety, fatigue, and depression for which she was treated from 2012 to 2016. Further, Dr. Ranavaya documented that Ms. Gibson experienced migraine headaches when she was in her twenties through her forties (she is now in her early sixties). Also, according to Dr. Ranavaya, the compensable work accident occurred when she was pushed against a wall while trying to prevent a patient from falling. She explained that during the incident she strained her neck and upper back, as she used her knee to keep the patient from crushing her against the wall. Ms. Gibson denied falling, striking her head, or any loss of consciousness. According to Dr. Ranavaya, the injury was superimposed on long-standing and severe degenerative disease and osteoarthritis of her spine, causing chronic neck and back pain. Nonetheless, Dr. Ranavaya noted that Ms. Gibson was able to lead an independent life and could perform all activities of daily living without assistance. He noted that Ms. Gibson reported that she enjoyed reading and she discussed with him a book about the Civil War. According to Dr. Ranavaya, Ms. Gibson recalled the details of the book very well. Dr. Ranavaya concluded that the objective findings and credible evidence in the record showed that the post-concussion headaches and post-concussion syndrome had fully resolved without any residual permanent impairment.

Dr. Ranavaya critiqued the report of Dr. Guberman, noting his disagreement with it. First, Dr. Ranavaya determined that Dr. Guberman failed to obtain or provide "any meaningful objective findings to support any disturbances of mental status and integrative functioning that is required before one can use Table 2 on page 142 of the *Guides*." Dr. Ranavaya maintained that there was no basis to support that Ms. Gibson had any disturbance of mental status and integrative functioning, noting that he spent four hours with her and found that she was intelligent, could communicate fully, and had an intact memory. Dr. Ranavaya also determined that Dr. Guberman misapplied the *Guides* section on "Adjustments for Effects of Treatment or Lack of Treatment." Here, Dr. Ranavaya explained that this section did not apply to any treatment, but rather to a treatment that caused total remission of signs and symptoms. Dr. Ranavaya referenced Sections 15.8 and 15.9 (pages 309 and 312, respectively) of the *Guides* and noted that impairment for headaches is derived from this section, rather than the method used by Dr. Guberman.

On March 14, 2024, the Board affirmed the claim administrator's order that granted Ms. Gibson a 0% PPD award. The Board found that Dr. Ranavaya's report was detailed and included normal neurological and mental status testing and a comprehensive review of Ms. Gibson's medical records. The Board found that Dr. Ranavaya's position was supported by other neurological evaluations in its record and that Dr. Mukkamala referenced the same sections of the *Guides* to rate Ms. Gibson's headaches, whereas Dr.

Guberman's rating relied on a different section and was an outlier. The Board deemed Dr. Ranavaya's findings to be reliable and held that Ms. Gibson had 0% WPI for post-concussion syndrome and post-concussion headaches. Ms. Gibson now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n,* No. 23-43, 2024 WL 1715166, __ W. Va. __, __ S.E.2d __ (2024).

Ms. Gibson argues that the Board was clearly wrong in finding that she did not prove by a preponderance of the evidence that she sustained more than 0% WPI for her compensable post-concussion syndrome and post-concussion headaches. Specifically, Ms. Gibson asserts that the Board erroneously found that Dr. Ranavaya's findings were the most credible of record and that the Board disregarded the bulk of the evidence that supports Ms. Gibson's testimony of suffering from constant headaches, dizziness, and brain fog, which are directly related to the compensable conditions. Finally, Ms. Gibson contends that only Dr. Guberman's findings were supported by the record, and he was the only evaluator who accurately attributed her symptoms to the compensable injury and properly evaluated her impairment. Ms. Gibson disputes Dr. Ranavaya's findings and methodology in rating her impairment and argues that the Board was clearly wrong in relying on his report. We disagree.

Here, the Board determined that Dr. Ranavaya's report was very detailed and that he included in his evaluation neurological and mental status testing. The Board further noted that Dr. Ranavaya remarked that Dr. Guberman had not provided the information necessary to assess Ms. Gibson's mental status pursuant to the *Guides*. Also, the Board

4

found that Dr. Ranavaya's report included a comprehensive review of Ms. Gibson's medical records and that he explained why he disagreed with Dr. Guberman's impairment rating. Finally, the Board found that Dr. Ranavaya's position was supported by normal neurological evaluations by other physicians and by Dr. Mukkamala. Thus, the Board held that Dr. Ranavaya's report, as supported by Dr. Mukkamala's supplemental report, was reliable and that Ms. Gibson had no impairment related to post-concussion syndrome or post-concussion headaches.

Upon review, we conclude that the Board was not clearly wrong in finding that Dr. Ranavaya's report was the most persuasive and was supported by the weight of the medical evidence. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in affirming the claim administrator's order, which granted Ms. Gibson a 0% PPD award.

Accordingly, we affirm the Board's March 14, 2024, order.

Affirmed.

**ISSUED:** October 1, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

5